Case 5:14-cv-00066 Document 135 Filed in TXSD on 06/30/16 Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
June 30, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| OLGA ADRIANA SARMIENTO | § § | |
| VS. | § § | CIVIL ACTION NO. 5:14-CV-066 |
| VALERIE L. PEÑA, *et al* | § | |

# REPORT & RECOMMENDATION

Pending is Defendant Peña's "Motion for Rule 11 Sanctions." (Dkt. No. 65). Plaintiff filed a response to the motion (Dkt. No. 69), and a supplement to that response. (Dkt. No. 74). Defendant Peña then filed a reply. (Dkt. No. 88). The parties appeared before the undersigned for a hearing on the motion.

Defendant Peña's complaints arise from the remote deposition of a nonparty witness, and statements Plaintiff's counsel made in support of her motion for leave to take that deposition. (Dkt. No. 65). Specifically, Defendant Peña argues Plaintiff made three unfounded assertions in support of her motion: (1) the witness would "voluntarily provide a deposition in Nuevo Laredo, [Tamaulipas,] Mexico," (Dkt. No. 37 ¶ 4); (2) the witness did not have a visa, and her visa was previously revoked because she was allegedly working in the United States without permission, (*id.* ¶ 2); and (3) "there is no certainty that if the visa is obtained that [the witness] will appear for a deposition in the United States—as there is no legal jurisdiction over her." (Dkt. No 43 ¶ 6). (Dkt. No. 65 at 5–6). Defendant Peña also argues that both Plaintiff and the witness engaged in egregious conduct at the deposition. (Dkt. No. 65 at 1). The undersigned will address each of these arguments in turn, and, for the reasons explained below, will recommend Defendant Peña's motion be **DENIED**.

Plaintiff requests that she be awarded the reasonable attorney's fees that she incurred as a result of Defendant Peña's motion. (Dkt. No. 69 ¶ 17). For the reasons explained below, the undersigned will recommend that request be **GRANTED**.

## BACKGROUND

This case arises from allegedly defamatory statements Defendant Peña made about Plaintiff. (Dkt. No. 1-2). Defendant Peña accused Plaintiff of abusing Defendant Peña's children. (*Id.*). Plaintiff alleges Defendant Peña coached the children to make those false accusations. (Dkt. No. 37 ¶ 1). Plaintiff claimed the children's former nanny, Socorro Palacios Garcia, knew about the coaching, and therefore moved for leave to take her deposition remotely. (Dkt. No. 37).

In support of that motion, Plaintiff's counsel represented to the Court that Ms. Palacios did not have a visa allowing her to enter the United States. She further alleged Ms. Palacios would have difficulty obtaining one because her visa was previously revoked when she was found to be working in the United States without legal permission. (*Id.* ¶ 2). Plaintiff's counsel contacted an immigration attorney about the situation. (*Id.* ¶ 3). That immigration attorney advised it would take roughly $1,500 and one year to obtain a visa and, even then, Ms. Palacios may not be able to get one. (*Id.* ¶ 3). Plaintiff's counsel also represented that she had "contacted the U.S. Customs and Border Patrol legal counsel [and] the U.S. Embassy in Nuevo Laredo," to try to find an option to get Ms. Palacios into the United States for the deposition. (*Id.*). Based on Plaintiff's counsel's representations of Ms. Palacios's inability to enter the United States, the Court granted her leave to take the deposition remotely. (Dkt. No. 52).

Opposing the motion, Defendant Peña's counsel noted there was no actual evidence that Ms. Palacios would not be allowed into the United States, only Plaintiff's counsel's

representations. (Dec. 2, 2015, H'rg. at 2:12 p.m.). The Court could have required Plaintiff to present testimony supporting her assertions, but instead took her word for it. (Dkt. No. 52). The Court noted that Plaintiff's counsel is an officer of the Court, her assertions are governed by Rule 11, and that Defendant Peña could bring the matter to the Court's attention if she discovered the assertions were untrue. (*Id.* at 2 n.1).

## THE INSTANT RULE 11 MOTION

Defendant Peña now claims that Plaintiff's counsel's assertions in support of the motion for leave to take the remote deposition were unfounded. (Dkt. No. 65 at 5–6). Defendant Peña also claims that Plaintiff's counsel and Ms. Palacios both "engaged in egregious conduct during the witness's deposition." (*Id.* at 1, 6–8). Defendant Peña moves the Court to sanction Plaintiff for this purported misconduct. (*Id.* at 8). Specifically, Defendant Peña asks for the "dismissal with prejudice of the defamation claim [against Defendant Peña]." (*Id.*). In the alternative, Defendant Peña asks the Court to strike Ms. Palacios's deposition and not allow her to testify at trial. (*Id.*). As the movant, Defendant Peña has the burden of proving the violations of Rule 11 she alleges. *See Guerrero v. Weeks*, No. 1:13CV837 JCC/JFA, 2014 WL 793523, at *6 (E.D. Va. Feb. 26, 2014).

### I. The Allegedly Unfounded Assertions

#### A. *Ms. Palacios would voluntarily appear for her deposition in Nuevo Laredo.*

Plaintiff's counsel stated Ms. Palacios would "voluntarily provide a deposition in Nuevo Laredo, [Tamaulipas,] Mexico." (Dkt. No. 37 ¶ 4). According to Defendant Peña, this statement implies "counsel or Plaintiff had talked about the deposition with the witness." (Dkt. No. 65 at 5–6). But, notes Defendant Peña, although Plaintiff's counsel made the representation more than

two days before the deposition, Ms. Palacios testified that she was first contacted about the deposition only two days before it took place,. (*Id.* at 3, 6).

First, it is not clear Ms. Palacios was actually testifying that no one had spoken with her about giving deposition testimony. (*See* Dkt. No. 69 ¶ 7). It could be that Plaintiff (or her brother, who is Defendant Peña's ex-husband and Ms. Palacios's former employer), had spoken with Ms. Palacios about the possibility of giving testimony, or a statement, long ago, and Ms. Palacios was simply testifying that no one had spoken to her about the specific date and time of that deposition. (*See id.*; Dkt. No. 65-1 at 56:9–57:3). Second, and more fundamentally, the challenged statement does not assert that Plaintiff, or her counsel, had actually spoken with Ms. Palacios about the deposition. Based solely on Ms. Palacios's close relationship with Plaintiff's brother and his children, Plaintiff could have reasonably believed that Ms. Palacios would voluntarily give testimony in Nuevo Laredo. Indeed, such a belief would have been correct. Ms. Palacios did voluntarily give deposition testimony in Nuevo Laredo. If Plaintiff's counsel's representations truly had no basis, the deposition probably would not have taken place. The undersigned concludes that the first of Plaintiff's counsel's assertions identified by Defendant Peña was not dishonest or unfounded.

### B. *Ms. Palacios does not have a visa to enter the United States, and it would be difficult for her to obtain one.*

Plaintiff's counsel stated Ms. Palacios did not have a visa, as her visa was previously revoked because she was allegedly working in the United States in violation of her visa status. (Dkt. No. 37 ¶ 2). According to Defendant Peña, this statement "suggest[s] that [Plaintiff's counsel] spoke to Ms. Palacios about her inability to enter the United States." (Dkt. No. 65). This suggestion is dishonest, Defendant Peña continues, because "Ms. Palacios testified that she

never spoke to anyone about her visa status or her supposed inability to enter the United States for a deposition." (*Id.*).

However, there are other ways Plaintiff's counsel could have learned about Ms. Palacios's visa issues aside from speaking with Ms. Palacios directly. In fact, that appears to be what happened. Javier Peña, Plaintiff's brother and Defendant Peña's ex-husband, had previously unsuccessfully attempted to obtain Ms. Palacios's presence in the United States to give testimony in his divorce proceedings. (Dkt. Nos. 69 ¶10; 69-3 at 161:21–162:9). Further, Plaintiff's counsel's statements regarding Ms. Palacios's loss of her visa were corroborated by Ms. Palacios's deposition testimony. (Dkt. No. 65-1 at 7:1–9:5).

Plaintiff's counsel obtained additional information from a third party about the possible difficulties involved in getting Ms. Palacios into the United States for a deposition. Specifically, Plaintiff's counsel stated she had contacted an immigration attorney about getting a new visa for Ms. Palacios. (*Id.* ¶ 3). The attorney informed her that it would cost $1,500 and that could take around a year. (*Id.*). And, according to the attorney, the application could still be unsuccessful. (*Id.*). There is nothing to suggest these statements are untrue. To the contrary, Plaintiff filed additional documentation showing Ms. Palacios was denied a visa as recently as last February. (Dkt. No. 123). Perhaps most importantly, it is undisputed that Ms. Palacios does not currently have a visa allowing her to enter the United States for a deposition. (May 20, 2016, H'rg. at 1:47 p.m.).

Accordingly, the undersigned concludes that the second statement identified by Defendant Peña was not unfounded or dishonest.

### C. *The Court cannot compel Ms. Palacios's attendance at a deposition in the United States.*

Finally, Plaintiff stated that, even if Ms. Palacios obtained a visa, "there is no certainty that . . . [she would] appear for a deposition in the United States [because] there is no legal jurisdiction over her." (Dkt. No. 43 ¶ 6). According to Defendant Peña, this statement "indicat[ed] that Ms. Palacios expressed resistance to traveling to Laredo for a deposition." (Dkt. No. 65). Again, as with the previous two statements, this one does not imply what Defendant Peña claims it does. Plaintiff was simply stating that, because the Court does not have jurisdiction to compel Ms. Palacios's appearance, there is no guarantee she would appear for a deposition in Laredo. That statement is correct and does not come close to implying that Ms. Palacios expressed resistance to appearing in Laredo for a deposition.

Accordingly, the undersigned concludes that the third statement identified by Defendant Peña was not dishonest or unfounded.

## II. Plaintiff and Palacios's Allegedly Egregious Deposition Conduct

Defendant Peña contends both Ms. Palacios and Plaintiff "engaged in egregious conduct during the . . . deposition." (Dkt. No. 65 at 1). Specifically, Defendant Peña asserts that Ms. Palacios committed perjury during the deposition and that Plaintiff caused Javier Peña to be present at the deposition, without informing Defendant Peña's counsel. (*Id.* at 6–7).

According to Defendant Peña, Ms. Palacios denied speaking with anyone about the deposition or her testimony, but later confessed to speaking with Javier Peña about it that morning. (*Id.*). However, Defendant Peña mischaracterizes Ms. Palacios's testimony. When asked if she had spoken with anyone about her deposition testimony *before the day of the deposition*, she answered that she had met with Plaintiff the previous summer. (*See* Dkt. No. 65-1 at 37:8–24). Later, when asked whether she had spoken with Javier Peña *up to the day of the*

*deposition*, she said she had spoken with him twice by telephone. (*Id.* at 41:14–25). Neither of these statements is inconsistent with Ms. Palacios's later statement that she met with Javier Peña earlier that morning.

Likewise, there is nothing necessarily unusual about Javier Peña meeting with Ms. Palacios before her deposition and discussing it with her. Also, Plaintiff was not obligated to tell Defendant Peña about that meeting, as Defendant Peña seems to suggest. (Dkt. No. 65 at 7 ("Plaintiff also failed to mention that her brother would be present with her key witness.")). Defendant Peña implies Javier Peña may have been present during the deposition itself: she asks rhetorically, "Was Plaintiff's brother sent to assist the key witness with her answers?" and cites to cases where the plaintiff attempted to surreptitiously coach a friendly witness during a telephonic deposition. (*Id.*). There is no evidence Javier Peña was present during the deposition itself.[1]

The undersigned concludes Ms. Palacios did not perjure herself, and there is no basis for finding that Ms. Palacios, Plaintiff, or her counsel, engaged in any egregious conduct in relation to the deposition.

### III. Plaintiff's Request for Attorney's Fees and Costs

Plaintiff has requested the Court award her the attorney's fees she incurred in responding to Defendant Peña's motion. (Dkt. No. 69 ¶ 17). The Court may award the prevailing party the attorney's fees it incurred in filing, or responding to, a Rule 11 motion. Fed. R. Civ. P. 11(c)(2). Awards of fees for prevailing on a Rule 11 motion are distinct from awards based on violations of Rule 11. *See Vanliner Ins. Co. v. DerMargosian*, No. 3:12-CV-5074-D, 2014 WL 1632181, at *1 (N.D. Tex. Apr. 24, 2014). The non-prevailing party need not have violated Rule 11 to

---

1 At the hearing, Defendant Peña's counsel stated he was not asking that the deposition be thrown out because of Javier Peña's alleged presence. (May 20, 2016, H'rg. at 2:00 p.m.).

have fees assessed against it. *See id.* Accordingly, the Court need not find Defendant Peña's Rule 11 motion was frivolous to award Plaintiff the fees she incurred in responding. *See id.* at *2. Instead, reasonable fees are to be awarded if they are warranted. *See id.* at *1.

Here, an award of fees is warranted. Defendant Peña complained that Plaintiff's key witness committed perjury, but fell far short of providing evidence that she did. Likewise, Defendant Peña pointed to assertions made by Plaintiff's counsel, and complained that those assertions *implied* untrue facts. But, the record is bereft of evidence supporting Defendant Peña's contentions. There does not appear to be a good faith basis for Defendant Peña's motion. Defendant Peña took a wild swing at having very unfavorable evidence excluded.

Bottom line: there is a third-party witness who does not have permission to enter the United States, but who does have testimony material to this case, and Plaintiff is entitled to depose that witness to obtain and preserve her testimony. The undersigned is not aware of any legal authority that requires Plaintiff to get a visa for a third-party witness to enter the country for a deposition. Even if there was such authority, and the Court were to require Plaintiff to undergo that expense, there is no guarantee Ms. Palacios's visa application would ultimately be successful, or that she would not simply change her mind and decide not to enter the United States for the deposition. This Court has no legal authority to compel her to cross that international border. Moreover, it is absurd to suggest the Court should actually delay these proceedings for another year so Plaintiff can pursue a visa for Ms. Palacios that may or may not be granted. If the witness is indeed willing and able to get permission to enter the United States and appear at trial, Defendant is invited to help her do so. Finally, assuming *arguendo* that Ms. Palacios desired to pursue her visa and was willing to testify at a trial, Plaintiff still had the right

to take her deposition in the interim to preserve testimony in case Ms. Palacios's efforts were unsuccessful.

Because there was no substantial basis for Defendant Peña's motion, an award of the reasonable fees Plaintiff incurred in opposing the motion is warranted. In assessing the reasonableness of the attorney's fees Plaintiff submits, the Court will review both the reasonable number of hours expended in responding to the motion, and a reasonable rate for those hours. *See Harman v. City of Univ. Park*, No. 3:94-CV-2450-P, 1997 WL 53120, at *2 (N.D. Tex. Feb. 3, 1997).

## CONCLUSION

For the reasons stated above, it is hereby **RECOMMENDED** Defendant Peña's Motion for Rule 11 Sanctions (Dkt. No. 65) be **DENIED** and Plaintiff's request for fees be **GRANTED**. If this recommendation is accepted by the District Judge, it is **RECOMMENDED** that the District Judge **DIRECT** Plaintiff to submit proof of her reasonable attorney's fees.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate

review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 30th day of June, 2016.

_____
J. Scott Hacker
United States Magistrate Judge